Our final case of the day is United States v. Rosario. Mr. Bolotin. Good morning, Your Honors, and may it please the Court. My name is Adam Bolotin, and I represent defendant-appellant Joel Rosario. Today, we're asking Your Honors to reverse the lower court's decision denying Mr. Rosario's pretrial motion to suppress for three reasons. First, law enforcement did not reasonably rely on the pre-Carpenter era law when it seized Mr. Rosario's CSLI. Second, the Inevitable Discovery Doctrine does not apply. And third, the admission of that evidence at trial was not harmless error. Turning to the first point of whether law enforcement reasonably relied on the laws that existed at the time when they made the pre-Carpenter warrantless seizure of the evidence. Now, the Stored Communications Act permitted law enforcement to obtain CSLI without filing a court order, so long as an emergency... Counsel? CSLI? Cell Site Location Information. We are generalists. Jargon from a particular field doesn't help with a generalist court. If you can use real words, that would help us. Sure thing, Your Honor. So the CSLI is the data that law enforcement is... Counsel, if you could use real words, that would help us. It's the pinging data, Judge. Stop using the acronym. Cell Site Location. Counsel, use that. Cell Site Location. Thank you, Your Honor. The law permitted law enforcement to obtain the cell site location as long as an emergency involving danger or death or serious physical injury existed. And what courts have looked at when interpreting that portion of the Stored Communications Act is they've compared it to whether an exigency existed. An exigency, of course, is a serious emergency that requires an imminent threat that needs an immediate response that law enforcement cannot take time to involve a court to respond to. And when we look at what happened in this case, it was the possession of firearms following a burglary. And while the possession of firearms is certainly a serious circumstance, it does not by itself arise to the level of an emergency, of an exigent circumstance. And we can look at this court's decision in Huddleston, where there was the possession of firearms, not by itself, but the possession of firearms by a person who had just committed or who had just made a death threat towards a person whose home they had invaded. And that's what created an exigency. We can also look at this court's decision in Hammond just a few weeks ago. In Hammond, there was a spree of burglaries which allowed law enforcement to believe that another burglary was about to be committed. And it was the way the burglaries were being committed, where somebody was coming into a business that was open with the public inside, had his finger on the trigger of a firearm, and handled the firearm in a dangerous manner. In our case, there was no basis to believe that this burglary was a part of a spree of burglaries, that another one was about to be committed. Counsel, what does that have to do with the exclusionary rule? You're effectively arguing as if every violation of the Fourth Amendment requires exclusion. One of the holdings of Hammond is that that's not true. My question is, has the Supreme Court ever required the exclusion of evidence gathered in reliance on a statute before that statute has been held invalid? Not that I'm aware of, Judge. Has this circuit ever so required? No, Judge. So you're making an argument that if accepted would be a first in the history of the country. That's a pretty bold argument. Your Honor, I believe that it's a bold argument, but when we look at the facts of this case, this is one of the only cases where there's an argument to be made. I think you've just fallen into the same tin can, by the way. I'm sorry, Judge. Go ahead. That reference may miss you. What I'm saying, Your Honor, is this is the first instance where we can actually look at and see that law enforcement did not follow the provisions of the Historic Communications Act when they went and obtained the exigency. And what the Supreme Court has held is you have to look at whether law enforcement, in good faith, followed the laws that existed at the time. And I don't believe that the facts support that because an exigency did not exist. And we can also look at Hammond, and I believe the government is going to argue that you do not have to simply look at the exigency requests in this case. Because Hammond talked about an independent source doctrine. But Hammond's application of the independent source doctrine in Hammond should not be applied in our case because of our case's different facts and circumstances. In Hammond, the data, the cell location data at issue that was received through the exigency request was not admitted at trial. In our case, that specific data, that specific cell site location was admitted at trial. It showed the phone traveling from Chicago through Indiana to Michigan in a parking lot near where the burglary occurred, around the time that the burglary occurred, and then traveling back from Michigan through Indiana back to Chicago. That was the specific data that was introduced at trial. Additionally, the independent source in Hammond, the court application, did not reference that data. In our case, the Michigan court order that was filed a week after law enforcement received the exigency request specifically cited to that data in order to obtain it. Three years later, Mr. Rosario is now indicted. He has that data that was given to him in discovery, and he files a motion to suppress. A week after he files that motion to suppress, now the government files their additional court order that they're going to claim as the independent source. The government's argument, Your Honors, blinks at reality. It cannot logically be argued that the data subject to the motion to suppress was actually obtained through an order that was filed after the motion. It is a legal fiction, Your Honors, and this shows Judge Easterbrook why this case is so different than other cases. This case is unlike other cases because we do not have a good faith reliance on the laws that existed at the time. Turning to whether the evidence would have been inevitably discovered, Your Honors, the government has the burden of proving that probable cause existed, that a warrant definitely would have been issued, and that law enforcement would have gone and gotten a warrant. But if we look at this case's facts, it's not certain that law enforcement would have gone and gotten a warrant because of what they did in this case. It was the same two choices that they had. They could have claimed exigency, not involve the court, or they could have filed for a court order involving the court, just like a warrant. What law enforcement did was, we're not going to involve the court. We're going to claim an exigency. So the facts of this case do not show and have no basis for this court to conclude that law enforcement actually would have gone and gotten a warrant, actually would have gone and involved the court, because that's not what they did in this case. The second problem, whether probable cause existed, at the time that law enforcement was investigating, what they had was an out-of-town number calling a store a half hour after it closed and used a private screening to block the number. It was not unreasonable and not suspicious for the store to receive out-of-area phone calls. In fact, four out of 12 of the calls that it received came from out-of-town numbers. It was not unreasonable to conclude, and law enforcement had no basis to determine otherwise, that this person calling was a salesperson, somebody who was inquiring about an item of the store, and they only called a half hour after the store closed. And the store closed at 5 o'clock. It's not unreasonable to conclude that this person was calling because they wanted to see if the store was still open. And I would argue, Your Honors, that the last point of contention, that they used a private number, is really a red herring. Because that private number did not do anything to push the ball over the goal line, giving law enforcement the idea that this number was involved in the robbery. Just like in Ngaro, they had no idea if that person was involved in a drug deal, because they knew nothing about that person. Just like law enforcement knew nothing about the person who called the store only a half hour after the store had closed, and a half hour before the store had been robbed. Finally, Your Honors, the introduction of this evidence at trial was not harmless error. Because as the government argued in its closing argument, it was the evidence, the dagger, that convicted Mr. Rosario. The other evidence introduced at trial was testimony from three people who were convicted felons, who were convicted of crimes of dishonesty, who had biases against Mr. Rosario, and that their testimony could not be believed on its face. The cell location data, Your Honors, showed and was able to be argued that no, these guys are actually telling the truth, that Mr. Rosario committed the robbery with them. And if you take that evidence away, you cannot be reasonably presumed that they would have been, a jury would enter a verdict believing those three witnesses. For those reasons, I see I have 10 seconds left. Maybe I have a little bit of time, maybe I don't, but we'd be asking Your Honors to reverse the district court's ruling. Thank you. Thank you, Counselor. Ms. Walker-Moore. Good afternoon. May it please the Court? My name is Caitlin Waldenruth, and I represent the United States. The historical cell site location information was properly admitted because the government followed the procedures of the Store Communications Act. As this Court's case law makes clear, the exclusionary rule does not apply and has never applied when the government relied in good faith on the Act's procedures before the Supreme Court's decision in Carpenter. Here, the government collected historical cell site location information by obtaining two separate 2703D orders under the Store Communications Act before the Supreme Court's decision in Carpenter. Consistent with this Court's recent decision in Hammond, the application for the second order from the Northern District of Illinois was obtained without reliance on information from historical cell site location data that law enforcement had previously received through an agency request or that Eastern District of Michigan order appellant referenced. The cell site location records admitted at trial were from this Northern District of Illinois order. Specifically, the trial record reflects that cell site location information from December 1st through December 16th of 2013 was admitted at trial. Appellant is correct that the analysis during trial focused on the dates immediately surrounding the bribery, although the case remains that this cell site location information came from the Northern District of Illinois order, which authorized the collection of data for the entire month of December of 2013. That actions and circumstances request law enforcement collected immediately after the bribery was identified was limited to the three-day range surrounding the bribery itself. Critically here, the District Court found that law enforcement followed the Act's procedures along every step of the way and that they acted within the legal framework at the time in seeking the agency request and subsequently seeking the 2703D order. The District Court's findings are entitled to great deference, and these factual findings are only reversed to clearly erroneous. Appellant is incorrect on a point he made earlier. Law enforcement did not just seek an exigent request. They did both. First, they sought an agency, and then a week later, after obtaining that record, they promptly went to a court in the Eastern District of Michigan and sought a court order under the Historic Communications Act to obtain that same location information. Additionally, discovery is inevitable here because the Northern District of Illinois's 2703D application did establish probable cause to obtain the historic cell site information, which would make discovery inevitable. Specifically, the Northern District of Illinois's application included the following information, that on the day of the burglary, the store owner had been visited by three men. Those men specifically looked at the firearms that were stolen that evening and told the store owner they were from out of state, which the owner found unusual based on the small nature of this shop. The application also identified phone records, but the phone number for which that historical cell site location information was sought was a number that chose to mark itself as private and call the store twice approximately 30 minutes before the burglary occurred. Appellant makes much of the fact that there were other calls that day. But if you look at the record, there were only three calls that were made after the store closed on the day of the burglary. Two of those calls came from this number for which the historic cell site information was sought and then collected. Critically, that application also contained information about sworn statements from the other two participants in the burglary, Mr. Childers and Mr. Mort. Those men both identified Mr. Rosario as the third participant in the burglary, and the application also detailed health surveillance footage that identified Mr. Rosario, along with those other co-defendants, at a local Ann Arbor hotel the night before the burglary, checking in with a fake name using an Indiana state license. At this point in the investigation, officers had also linked Mr. Rosario to the phone number that had called the store. This information together demonstrates a fair probability that evidence linked to the burglary would be found in that historic cell site location information about where that phone was around the time of the burglary. I'd like to briefly touch on Appellant's point regarding exigent circumstances. Here, the key issue is whether officers in good faith followed the procedures of the Store Communications Act, specifically Section 2702. Section 2702 of the Act allows the service provider, here Sprint, to provide on a voluntary basis location information or other non-contact records for a phone number if the provider in good faith believes there's been an emergency. That emergency can relate to danger or a risk of death. Critically here, there's no requirement under the statute's plain language that that danger be eminent. Officers in 2013 reasonably relied on the Store Communications Act to make a request to Sprint. They were concerned about the fact that there were 24 firearms, and specifically the fact that among those 24 firearms, 20 were handguns. And in the officer's experience, there was a high risk that those would be quickly distributed onto the streets. They explained that concern to Sprint, and Sprint voluntarily chose to provide records, all in accordance with the Act. However, even if this Court determines that the officer's reliance on Section 2703 and that exigency request was unreasonable, the historic cell site location information that was admitted at trial is still admissible because of the Northern District of Illinois' 2703 order and the government's good faith reliance on that provision. And finally, the government would briefly like to note that even if there was error in admitting these records, that error was harmless because the overwhelming evidence against Mr. Rosario at trial established beyond a reasonable doubt that a jury would have found him guilty even without that evidence. In addition to the evidence I just mentioned previously that was identified within the Northern District of Illinois' 2703D order, there was additional testimony from a prisoner who was housed with Mr. Rosario who testified that Mr. Rosario had told him that he had robbed a store in Ann Arbor and specifically stolen unique items, firearms, gold, and precious metals. Critically, this prisoner's disclosure of this information to law enforcement occurred before any of these defendants were charged in this burglary. If there are no questions from the Court, the government rests on its briefing and asks this Court to please affirm Mr. Rosario's conviction and sentence. Thank you, Counsel. Mr. Bolotny, you have eight seconds remaining. We will increase it to 30. Thank you, Your Honors. I'll wait for the clock to tick up for your generosity. Thank you. Just very briefly as I am running out of time, I would just like to mention that nothing connected the men who visited the store the night before the robbery or the night of the robbery to the phone number. For that reason, there was not probable cause to connect that phone number to the robber or the burglary at all. And for those reasons and everything that we've mentioned in our brief, we'd be asking Your Honors to reverse the Lower District Court's decision denying our motion to suppress below. Thank you. Thank you very much. And, Counsel, we appreciate your willingness to accept the appointment and your assistance to the Court as well as your client. The case is taken under advisement and the Court will be in recess.